## Case No. 1,540.

### In re BLIGHT'S ESTATE.

[1 Pa. Law J. (1842) 225.]

District Court, E. D. Pennsylvania.

BANKRUPTCY—UNCLAIMED DIVIDENDS.

Where a man had been declared bankrupt, many years ago, and dividends on his estate were long unclaimed by the persons entitled to them, the court declined to assist the bankrupt's administrator to get possession of these unclaimed dividends, it appearing that other creditors not yet paid in full, opposed the application.

In bankruptcy. On the 22d June, 1842, the administrator of Peter Blight, deceased, who had been decreed a bankrupt, under the act of congress, of [April 4] 1800 [2 Stat. 21], presented a petition praying the court to supersede the commission of bankruptcy, and for such other relief, &c. in the premises, as the court might deem fit. The commission referred to, had issued in the year 1801, and Blight had been duly declared a bankrupt, and surrendered himself; and in 1805 obtained his certificate of discharge. The whole amount of debts proved under the commission was,

$1,028,296 28

And the following dividends had been made:

| | | | | | |
|---|---|---|---|---|---|
| 1802 | 1st Div. | 20 | p. c. | $204,541 55 | |
| 1805 | 2d " | 2½ " | | 26,674 21 | |
| 1815 | 3d " | 1 " | | 10,282 87 | |
| 1820 | 4th " | 23/32 | of 1 p. c. | 7,390 84 | |
| 1825 | 5th " | 35/100 " | " | 3,599 02 | |
| 1839 | 6th " | 4/100 " | " | 411 31 | |
| | | | | | $252,899 80 |

Leaving, of unpaid debts a balance,     $775,396 48*

The first two dividends, amounting as above stated to 22½ p. c. were claimed by all the creditors, and paid accordingly; and some of the creditors constantly claimed their shares whenever a dividend was made; and the last dividend had been paid to eighty-one different creditors, representing debts to the amount of about three hundred thousand dollars. But as the creditors were

---

* This calculation, though, apparently, not exact in all particulars, is printed as it was presented to the court by the assignee.

very numerous, the later dividends minute, the lapse of time quite considerable, and a number of the creditors resident in foreign countries, portions of the later dividends had not been called for, and still remained unclaimed, notwithstanding they had been "diligently advertised and public notice given in the papers to the creditors of their being declared." The dividends unclaimed, it was said, amounted to about $2000.

The object of this application was, to enable the representatives of the bankrupt, to get possession of these dividends. [Application denied.]

The assignee with two creditors appeared personally in court, to oppose the application.

Mr. Saunders Lewis, for the administrator, contended, that under the circumstances already stated, the representatives of the bankrupt were entitled to the presumption in law, that the claimants who omitted to receive their dividends, had been paid their debts. In such a lapse of time many creditors were dead; the claims forgotten or abandoned; and, the dividends being so minute, there was, in point of fact, no probability that they would ever be demanded. In regard to the last dividend, though three years had elapsed since it was declared, not one-third, in amount, of the claimants had asked for it. Though it did not appear precisely, from what date the dividends unclaimed, had come over, a portion of them, it was obvious were of old standing. At any rate, it laid on the assignee, to show that the unclaimed dividends were modern, if they were so. He ought to satisfy the court by producing books. The administrator could know the fact only in a general way. In a general way the thing was evident. In Sailor v. Hertzog, 4 Whart. 259, the supreme court of Pennsylvania held, that in the case of an insolvent debtor, the presumption that all his debts were paid, arose after a lapse of fourteen years. See Judge Rogers' charge to the jury, page 267, confirmed by the court on page 278. In many of the cases here, no doubt, a right to the dividend had been lost by the statute of limitations. It has been held that the statute applies to such a demand. 2 Deac. p. 599, Index citing Ex parte Clarkson, 3 Mont. & A. 154.[2] The prayer for relief, was of a general nature. The court, in the exercise of its discretion, would so modify the supersedeas, or otherwise dispose of the matter, as to produce no injustice.

Mr. T. I. Wharton, for the assignee, remarked, that such an order as was prayed for, would, if granted, be entirely without precedent, and would be unjust. In the case cited from 4 Wharton, p. 259, nothing whatever had been done by the insolvent's assignee or by the creditor's. That was a fair case for presumption. Here, however,

on the facts appearing, no court could presume payment. Evidence overcame presumption. Creditors were here, before the court. Besides, the prayer was, to supersede, and for such, &c. Now a supersedeas would not be proper, even if the case were one for relief. The effect of a supersedeas, was to set aside everything that had been done. The cases in which a supersedeas will be granted, are enumerated by Judge Cooper, "Bankrupt Law of America," p. 167. It is always for some inherent defect, or by consent, or by all the debts having been paid off. The court could exercise no discretion but one guided by sound legal principles. The nature and the effects of a supersedeas were settled. The court would not change them. The petitioners could proceed at law, or file a bill in equity. That sort of proceeding would be more regular.

Mr. Ellis Lewis replied, that by the prayer to supersede, it was not meant to ask for a technical "supersedeas" in bankruptcy. The court would readily understand that the term was used in its common acceptation; that the petition meant to ask for an order to render the assignee's possession of the unclaimed dividends, inoperative as respected the administrator. The prayer was, moreover, general in its terms. Besides this, one ground of a supersedeas is a settlement or a payment of all the debts. Cooper, 167. We contend that in this case the law will presume the debts to be paid. It would then be a case for a supersedeas.

(Mem. [from original report]. A good deal was said on both sides, in the argument, about the case of Mr. Robert Morris's estate, in which, under circumstances (as Mr. Saunders Lewis said) not very dissimilar to those of this case, a supersedeas had been granted by Judge Hopkinson. Mr. Wharton thought that that case went to the verge of law; but at any rate that it was not a precedent for a supersedeas in this. The case is too long to report here, but it may be proper to state that a pamphlet report of it, had been given to RANDALL, District Judge, before his decision in this case.)

Cur. vult advisari.

RANDALL, District Judge. If the case were one where there could arise a presumption of law that the debts of the bankrupt had been all satisfied, the court might perhaps entertain an application for an order upon Blight's assignee to pay to the administrator the dividends so long unclaimed. But the case does not afford room for the presumption spoken of. No less than eighty-one creditors, representing nearly a third in value, of all the claimants, received a dividend within three years; and creditors appear now before me, to resist the prayer of the petition. The bankrupt's estate is greatly insolvent, and if any dividends remain unclaimed, they will, after a certain time, fall into the general fund, and make it proper that a new dividend be made. As long as any creditors remain unpaid, and choose to insist upon payment, Blight's representa-

---

[2] Anti, Ex parte Healey (In re Norris), 1 Deac. & C. 361.

tives, cannot claim any part of the estate. The petition must, therefore, I think, be dismissed.